IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID IVERSON,                           )
                        Plaintiff,       )
                                         )
        vs.                              )    Civil Action No. 11-1108
                                         )
                                         )    Judge Terrence F. McVerry
JAMES C. BARNACLE; CINDY G.              )    Magistrate Judge Maureen P. Kelly
WATSON; BRIAN V. COLEMAN;                )
CAPT. W. LEGGETT; LT. HOOPER;            )
LT. F. SALVAY; ROBERT TRETINIK;          )
TOM HOVANIC; D.D. STROTMAN;              )
JOHN ALBRIGHT; C/O I ROLL; SUPT.         )
JOHN K. MURRAY; MAJOR JOHN               )
HORNER; RODNEY CARBERRY;                 )
SM. SCOTT FAIR; LT. W. TIFT,             )
                        Defendants.      )

## REPORT AND RECOMMENDATION

## I.      RECOMMENDATION

        Plaintiff David Iverson ("Plaintiff" or "Iverson"), a prisoner currently incarcerated in the

State Corrections Institution at Fayette ("SCI-Fayette"), has filed this *pro se* civil rights action

against various supervisors and corrections officers employed by the Pennsylvania Department

of Corrections ("DOC") at both SCI-Fayette and the State Corrections Institution at Camp Hill

("SCI-Camp Hill").   Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 for the violation of his

rights under the First, Eighth and Fourteenth Amendments to the United States Constitution, as

well as claims for relief pursuant to 42 U.S.C. §§ 1981, 1985 and 1986.  Defendants have filed a

Partial Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 50], to which Plaintiff has

filed a Brief in Opposition [ECF No. 54] and a Declaration in Opposition to Defendant's Partial

Motion to Dismiss Amended Complaint [ECF No. 55].

Upon consideration of Defendant's Partial Motion to Dismiss and Plaintiff's opposition thereto, and for the following reasons, it is respectfully recommended that the Partial Motion to Dismiss [ECF No. 50] be granted in part and denied in part.

## II.     REPORT

### A.     FACTUAL AND PROCEDURAL BACKGROUND

#### 1. Procedural History

Plaintiff commenced this action on August 11, 2011, with the filing of his original Complaint at No. 11-1483, in the United States District Court for the Middle District of Pennsylvania. Plaintiff's original Complaint alleges claims against nine DOC supervisors and corrections officers employed at SCI-Fayette and two statewide DOC grievance officers for his treatment as an inmate incarcerated at SCI-Fayette, a facility located within the venue of the United States District Court for the Western District of Pennsylvania. [ECF No. 1]. Eleven days later, on August 22, 2011, Plaintiff filed an Amended Complaint alleging supplemental claims arising out of his treatment at SCI-Camp Hill, where Plaintiff was temporarily transferred for evaluation. The Amended Complaint identifies four employees at SCI-Camp Hill and one employee at SCI-Fayette as newly named Defendants and alleges the violation of Plaintiff's constitutional rights arising out of the unsanitary conditions of his cell at SCI-Camp Hill, a facility located within the jurisdiction of the United States District Court for the Middle District of Pennsylvania. The Amended Complaint incorporates the original Complaint by reference and thereby attempts to join these supplemental claims which arose solely from conditions at SCI-Camp Hill.

The United States District Court for the Middle District of Pennsylvania concluded that Plaintiff's claims, as stated in his original Complaint, arose out of his confinement at SCI-

Fayette. Accordingly, on August 30, 2011, the United States District Court for the Middle District entered an Order transferring the entirety of Plaintiff's action to the United States District Court for the Western District, where it deemed venue appropriate. However, the transfer Order did not consider the supplemental claims alleged in the Amended Complaint filed that day, which arose solely out of Plaintiff's confinement in a specific cell at SCI-Camp Hill. [ECF No. 13].

At the time of transfer, neither the original Complaint nor the Amended Complaint had been served on any named Defendant. Because of the existence of two complaints containing separate claims and parties, this Court entered an Order on October 11, 2011, requiring Plaintiff to file a Second Amended Complaint, naming all of the Defendants against whom he wished to proceed and setting forth all of the claims that he wished to bring against them in a single consolidated document. [ECF No. 19]. Plaintiff responded by attaching a new cover sheet to his Amended Complaint, foregoing the addition of those claims set forth in the original Complaint. [ECF No. 24]. Upon service of this abridged Amended Complaint, Defendants filed a Motion to Strike the Amended Complaint, citing Plaintiff's failure to obey this Court's prior Order directing the preparation of consolidated document. [ECF No. 46]. Plaintiff filed another Amended Complaint, which has been docketed as Plaintiff's Third Amended Complaint, and which has been designated as the operative complaint in this action. [ECF Nos. 48, 49, Order dated February 15, 2012].

Defendant's Partial Motion to Dismiss relates to the consolidated Third Amended Complaint, and seeks dismissal of claims based upon: (1) the misjoinder of claims arising out of Plaintiff's confinement at SCI-Camp Hill; (2) the patent expiration of the statute of limitations with regard to claims arising prior to August 11, 2009; (3) Plaintiff's conceded failure to exhaust

prison grievance procedures as to claims arising out of an incident at SCI-Fayette on March 30, 2011; (4) Plaintiff's failure to allege facts giving rise to a claim upon which relief can be afforded with regard to claims for retaliation, verbal threats and placement in a "strip" or "hard cell" without personal property after throwing a cup of liquid at a corrections officer; and, (5) the lack of involvement of the majority of the Defendants as to all remaining claims, thereby requiring their dismissal from this action.

### 2. Factual Background

Plaintiff's Third Amended Complaint sets forth five discrete incidents upon which his claims of constitutional violations are predicated.

### a. June 19, 2008 Injury of Plaintiff's Hands

The first incident occurred at SCI-Fayette on June 19, 2008, well over three years prior to the filing of Plaintiff's original Complaint, when Defendant Albright closed a cell door food slot or wicket on Plaintiff's hand while serving breakfast, causing Plaintiff to suffer pain and an alleged deformity. [ECF No. 49, p. 3 ¶¶ 1-5]. Plaintiff alleges that Defendant Hovanic, a registered nurse, examined Plaintiff's hand early that morning and deemed the injury minor and potentially self-inflicted. [ECF No. 49, pp. 3-4, ¶¶ 13-14]. Defendant Hovanic photographed Plaintiff's hand and x-rays were taken early that afternoon. No further treatment was prescribed. [ECF No. 49, p.4, ¶15].

Plaintiff filed several unsuccessful administrative grievances complaining of the incident and the medical treatment he received. [ECF No. 49, p. 4, ¶¶ 16- 33]. These grievances form the basis of Plaintiff's allegations against Defendants Salvay, Superintendent Coleman, and Grievance Officer Hooper, as well as Defendants Watson and Barnacle, employees of the DOC Office of Professional Responsibility, for failing to properly investigate the incident and

disregarding the harm caused by Defendant Albright. In addition, Plaintiff alleges a claim against Defendant Tretinik, the DOC Health Care Administrator, alleging his deliberate indifference for failing to send Plaintiff the results of his x-rays without first requiring Plaintiff to schedule a sick call visit. Id.

### b. June 2009 Destruction of Complaint

Plaintiff alleges that in June 2009, he prepared a complaint seeking judicial relief for claims arising out of the June 2008 assault. Plaintiff further alleges that after preparing the complaint, Defendant Roll, a guard in the SCI-Fayette Restricted Housing Unit, thwarted Plaintiff's attempt to file the complaint with this Court. Plaintiff alleges that Defendant Roll did not deposit the envelope containing the suit and accompanying affidavits into the mail box in his housing pod, and commented that Plaintiff's good handwriting was going to waste. [ECF No. 49, p. 5, pp. 35-37].

Plaintiff apparently kept a copy of the June 2009 complaint, and has appended only the first page of the undated complaint as an exhibit to his Third Amended Complaint. [ECF 49-9]. Plaintiff did not take any additional steps to file his June 2009 complaint and alleges that staff at SCI-Fayette interfered with his ability to file grievances and mail legal documents until his subsequent transfer to SCI-Camp Hill. [ECF No. 49, p. 6, ¶ 40] However, as made obvious by the exhibits to Plaintiff's Third Amended Complaint, Plaintiff was successful in mailing several grievances and letters complaining about his treatment at SCI-Fayette to various DOC officials and the DOC Office of Professional Responsibility. In particular, Plaintiff successfully mailed grievances and correspondence dated January 13, 2010, January 15, 2010, January 20, 2010, February 4, 2010, February 8, 2010 and March 7, 2010. [ECF No. 49-9 – 49-17].

### c. January 10, 2010 Use of Excessive Force

Plaintiff next alleges claims against Defendants Albright and Leggett, arising out of an incident on January 10 and 11, 2010, when Defendants are alleged to have used excessive force in placing Plaintiff in body restraints for a period of 48 hours. [ECF No. 49, pp. 6-7, ¶¶ 42-49]. Defendants deny Plaintiff's allegations regarding this incident, but do not currently seek dismissal of these claims. [ECF No. 50, ¶ 1].

### d. March 2011 Incidents

Plaintiff's Third Amended Complaint also seeks relief for the violation of his rights arising out of an incident where he was allegedly fed urine-tainted chicken on March 30, 2011. [ECF 49, p. 8, ¶¶ 62-63]. Plaintiff's Third Amended Complaint concedes that he did not report the incident or file a grievance because he feared additional retaliation. [ECF No. 49, p. 8, ¶ 64]. On the same day as this alleged incident, Plaintiff alleges he was the subject of a retaliatory transfer to SCI-Camp Hill's Special Management Unit. Plaintiff contends his rights were violated because the transfer occurred without a mental health evaluation or a hearing to provide him an opportunity to challenge the "retaliatory" transfer. In addition, Plaintiff alleges that his transfer to SCI-Camp Hill occurred two days after he allegedly threw the contents of a Styrofoam cup onto a corrections officer, leading to a cell extraction by Defendant Tift. [ECF No. 49, p. 8, ¶ 71]. Plaintiff alleges that after the cell extraction, Defendants continued their retaliation by conducting a strip search and placing him in a "hard cell" with only a security smock, a security blanket and a mattress. [ECF No. 49, p. 8, ¶ 72].

### e. Temporary Cell Conditions at SCI-Camp Hill

Plaintiff's final allegations concern the conditions of his temporary cell at SCI-Camp Hill and inadequate and unsuccessful grievance procedures with regard to his housing complaints. [ECF No. 49, p. 9, ¶¶ 75- 101]. Plaintiff alleges that in conjunction with his transfer to SCI-Camp Hill, that staff at SCI-Fayette identified Plaintiff as a disciplinary custody inmate. Plaintiff alleges that this "retaliatory" classification led SCI-Camp Hill staff to place Plaintiff in a cell that was covered with the feces of an inmate suffering from AIDS, who had previously been assigned to the cell. In addition to the filth, Plaintiff alleges the cell did not have a mattress, requiring him to sleep on a metal bed frame, leading to back pain for which medical treatment was inadequate. In addition to his back pain, Plaintiff alleges that the conditions of the cell resulted in a rash for which medical treatment was denied. [ECF No. 49, p. 9, ¶ 80]. Plaintiff alleges that he was left in the feces covered cell for six days and that his requests for cleaning supplies were refused. Plaintiff's allegations concerning SCI-Camp Hill are directed toward Defendants Carberry, Horner, Fair, and Superintendent Murray, each of whom are alleged to have either participated in his placement in the unsanitary cell or failed to respond to his multiple grievances concerning the cell conditions.

### B.    STANDARD OF REVIEW

Pursuant to Fed.R.Civ.P. 12(b)(6), in deciding a motion to dismiss, the court must read the complaint in the light most favorable to the non-moving party and all well-pleaded, material allegations in the complaint must be taken as true. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In

re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397–98 (3d Cir. 2000). Here, the Court will also consider the numerous attachments to Plaintiff's Third Amended Complaint. As noted by the United States Court of Appeals for the Third Circuit, "[w]here a plaintiff relies upon separate documents in the complaint and attaches those documents as exhibits to the complaint, the Court may properly consider the relied upon documents when analyzing a motion to dismiss." Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004). Therefore, taking into consideration the allegations set forth in Plaintiff's Third Amended Complaint and the facts as established by the exhibits thereto, the question is whether Plaintiff can prove any set of facts consistent with his or her allegations that will entitle him or her to relief. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly et.al., 550 U.S. 544, 555 (2007). In Twombly the Court made clear that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

In 2009, the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Supreme Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 1949.  Only "a complaint that states a plausible claim for relief [will] survive[ ] a motion to dismiss." Id. at1950.

In light of the decision in Iqbal, the United States Court of Appeals for the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion. First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–211 (3d Cir. 2009). Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. Id.

Because Plaintiff is a prisoner and names governmental entities or employees thereof as defendants, the screening provisions of the Prisoner Litigation Reform Act ("PLRA") set forth in 28 U.S.C. § 1915A apply.  In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted in forma pauperis status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000). Hence, if there is a ground for dismissal, which is not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua*

*sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., CIV.A.06-115E, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007), aff'd, 264 Fed. Appx. 183 (3d Cir. 2008).

Lastly, because Plaintiff is pro se, courts accord an even more liberal reading of the complaint, employing less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519 (1972).

### C.    DISCUSSION

#### 1. Pre-August 2009 Claims and the Statute of Limitations

Defendants seek the dismissal of several claims arising out of the alleged assault and purported injury of Plaintiff's hand on June 19, 2008, contending that the claims are barred by the applicable statute of limitations. The federal civil rights laws do not contain a specific statute of limitations for Section 1983 actions. However, it is well established that the federal courts must look to the relevant statute of limitations for personal injury claims to determine the applicable limitations period. Sameric Corp. Del., Inc v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998) (internal citations omitted). In this regard, federal courts sitting in Pennsylvania have adopted Pennsylvania's two year personal injury statute of limitations set forth at 42 Pa.C.S.A. § 5524, in determining that Section 1983 claims must be filed no later than two years from the date the cause of action accrued. See, Harrisburg County Police Dept., 91 F.3d 451 (3d Cir. 1996). Furthermore, a claim under Section 1983 accrues when the plaintiff "knew or should have known of the injury upon which [his] claim is based." Sameric, 142 F.3d 599.

Here, Plaintiff's original Complaint was filed on August 11, 2011; however, it was signed by Plaintiff on August 3, 2011. Thus, for purposes of applying the statute of limitations, this Court will treat August 3, 2011, as the relevant filing date pursuant to the prison mailbox rule.

See Commonwealth v. Little, 716 A.2d 1287 (Pa. Super. 1998) (in determining the date upon which a prisoner's pleading is filed, Pennsylvania applies the prison mailbox rule, which provides that the "date of delivery of [the pleading] by the [inmate] to the proper prison authority or to a prison mailbox is considered the date of filing of the [pleading]"). Accordingly, any claim concerning an injury of which Plaintiff "knew or should have known" prior to August 3, 2009, is barred by the two year statute of limitations.

The United States Supreme Court has unequivocally recognized that while the statute of limitations is an affirmative defense, where the allegations of the complaint show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim. Jones v. Block, 549 U.S. 199, 215 (2007). Moreover, a federal court may *sua sponte* raise the statute of limitations in screening a complaint so long as the statute of limitations defect is apparent from the face of the complaint. Cunningham v. Westmoreland County Prison, (No. 11-392) 2011 WL 1598210 *3 (W.D. Pa. April 6, 2011), citing Dellis v. Corrections Corp. of America, 257 F.3d 508, 511 (6th Cir. 2001); Tate v. United States, 13 F.App'x 726 (9th Cir. 2001). Here, it is apparent from the face of both Plaintiff's original Complaint and Third Amended Complaint that he was immediately and fully aware of his claims arising from (1) the alleged assault on June 19, 2008, (2) his medical treatment and his attempted grievances flowing from the June 19, 2008, assault, and (3) his claims concerning the alleged interference with the filing of a complaint on June 16, 2009. Because Plaintiff delayed in filing his original Complaint for more than two years from these incidents, Plaintiff's claims against Defendants Albright, Hovanic, Tretinik, Salvay, Coleman, Watson, Hooker, Barnacle and Roll arising prior to August 3, 2009, are time barred and subject to dismissal.

## 2. Continuing Violation and Equitable Tolling

Plaintiff argues that his claims should not be time barred pursuant to the continuing

violation doctrine or, in the alternative, that the statute of limitations should be equitably tolled

as a result of Defendant Roll's alleged interference with Plaintiff's filing the original Complaint.

[ECF No. 54, pp. 3-4].

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995). "When a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991).
>
> In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir.2001).

In this case, the third factor is dispositive as each of the claims accruing prior to August

3, 2009, for each complained of incident had a sufficient degree of permanence triggering a duty

on behalf of Plaintiff to assert his rights. First, Plaintiff complains that he was assaulted by

Defendant Albright on June 19, 2008, and that he was denied adequate medical treatment for his

alleged injury the same day. Plaintiff thus was acutely aware no later than June 19, 2008, of the

facts giving rise to his claims against Defendants Albight, Hovanic, and, subsequently Tretinik.[1]

Second, Plaintiff alleges that Defendants Salvay, Coleman, Watson, Hooper and Barnacle violated his rights by failing to properly investigate his claims through the prison grievance procedure, all of which were completed on or before February 12, 2009. [ECF No. 49, pp. 4-5 ¶¶ 17-33].  Finally, Plaintiff alleges that on June 16, 2009, Defendant Roll interfered with Plaintiff's attempt to file a civil rights complaint with this Court by failing to deposit Plaintiff's complaint in the mailbox and telling Plaintiff "we don't allow snitching on officers around hear, it's too bad all that good hand writing had to go to waist."  [ECF No. 49, p. 5, ¶ 37 (*sic passim*)].  Based on these facts, Plaintiff was aware no later than June 16, 2009, of his separate claim against Defendant Roll for interference with his First Amendment right to court access.  Accordingly, while Plaintiff alleges that he continued to suffer acts of retaliation and abuse after June 16, 2009, the "continuing conduct of defendant[s] will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]."[2] Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998). Because Plaintiff's Complaint was not filed against Defendants Albright, Hovanic, Tretinik, Salvay, Coleman, Watson, Hooper and Barnacle within two years of their occurrence, his claims against them are time-barred.  Foster v. Morris, 208 F. App'x 174, 177–178 (3d Cir. 2006) (alleged violations regarding the lack of a wheelchair accessible shower and grab bars for an inmate's toilet had a degree of permanence such that plaintiff was on notice of his duty to assert his rights and continuing violations doctrine held inapplicable).

---

[1] Defendant Tretinik's alleged deliberate indifference in requiring Plaintiff to attend sick call to obtain his x-ray results occurred on July 18, 2008.

[2] Plaintiff attempts to connect the June 2008 assault to a second unrelated incident eighteen months later, when he was allegedly placed in a belly restraint system that was so tight, it caused injury.  [ECF No. 54. P. 3].  However, given these two isolated instances and Plaintiff's numerous grievances and alleged attempt to file a complaint arising out of the June 2008 incident, it is clear that the first assault had a degree of permanence so as to trigger a duty to assert his rights within two years, or no later than June 2010.  Berry, supra.

Plaintiff alternatively argues that the statute of limitations should be equitably tolled as a result of Defendant Roll's alleged interference with the filing of a complaint on June 16, 2009. Plaintiff alleges this interference prevented him from filing a complaint until he was transferred to SCI-Camp Hill on March 30, 2011. Notably, after his transfer, Plaintiff delayed an additional four months before filing the instant action. Accepting the allegations contained in Plaintiff's Third Amended Complaint as true, Plaintiff's Third Amended Complaint and the exhibits attached thereto make apparent that Plaintiff failed to exercise due diligence in commencing this action by failing to file his complaint at the first available opportunity after he was clearly made aware of the possibility that his purported attempt to file a complaint in June 2009 was obstructed. As such, Plaintiff is not entitled to equitable tolling to permit his late claims to proceed.[3]

> As explained by the United States Court of Appeals for the Third Circuit:
>
> Equitable tolling applies when a plaintiff has "been prevented from filing in a timely manner due to sufficiently inequitable circumstances." Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir.1999). This occurs "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." .... The plaintiff, however must "exercise due diligence in preserving his claim." Irwin [v. Dep't of Veterans Affairs], 498 U.S. [89] at 96, 111 S.Ct. 453, 112 L.Ed.2d 435 [1990]. Equitable tolling is an extraordinary remedy which should be extended only sparingly.

Hedges v. U.S., 404 F.3d 744, 751 (3d Cir. 2005) (footnote omitted). Moreover, "equitable tolling is permitted only if the party has exercised due diligence throughout the period it seeks to have tolled." Oporto v. Gonzales, 242 F. App'x 756, 758 (2d Cir. 2007); Truxal v. District Attorney of Westmoreland County, (No. 08–cv–00934), 2010 WL 411766, at *5 (W.D. Pa. Jan.

---

[3] Because all facts concerning the application of equitable tolling are apparent from the face of Plaintiff's Third Amended Complaint and Exhibits attached thereto, dismissal of Plaintiff's late claims is appropriate. McPherson v. U.S., 392 F.App'x 938, 942–943 (3d Cir. 2010).

28, 2010) ("the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll.") (quoting Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000)). Furthermore, it is the Plaintiff's burden to establish entitlement to equitable tolling. Harris v. Homecomings Financial Services, Inc./Bank One, 377 F. App'x, 240, 243 (3d Cir. 2010) ("In order to equitably toll a statute of limitations, a plaintiff must establish, in pertinent part, that the defendant actively misled her about her claims or that some other extraordinary circumstance prevented her from pursuing her claims. Moreover, she must demonstrate that she diligently pursued her claims.") (emphasis added) (citations omitted); Carter v. Keystone, 360 F. App'x 271, 273 (3d Cir. 2010) ("Plaintiff bears the burden to show that equitable tolling is warranted.").

Here, Plaintiff's Third Amended Complaint alleges that after Defendant Roll allegedly failed to mail his complaint in June 2009, he was "not allowed to file this suit untill (*sic*) the Defendant (Sup't Brian Coleman) and the other named Defendants had the Plaintiff placed in the Special Management Unit (Lock Down) in a different institution (SCI Camp Hill)." [ECF No 49, p. 6, ¶ 40]. Plaintiff's Third Amended Complaint further alleges that this transfer occurred on March 31, 2011. Based upon the exhibits to Plaintiff's Third Amended Complaint, however, it is clear that prior to his transfer from SCI-Fayette to SCI-Camp Hill, Plaintiff filed grievances and appeals complaining about allegedly abusive treatment received by Defendant Albright on January 12, 2010, January 15, 2010, February 4, 2010, March 7, 2010, and mailed a complaint concerning alleged abuse to the DOC Office of Professional Responsibility on February 8, 2010 (having received a postal receipt dated February 9, 2010). [ECF No. 49-9 – 49-17]. In addition, Plaintiff does not allege any bar to access to the SCI-Camp Hill mail system from March 31, 2011, through August 3, 2011, the date of the filing of his original Complaint so as to permit any

entitlement to equitable tolling to extend an additional four months beyond his transfer away from SCI-Fayette.

Given the undisputed evidence presented *by Plaintiff* that he had access to the postal service prior to the expiration of the statute of limitations, Plaintiff cannot meet his burden to show that he acted with sufficient due diligence in the prosecution of his claims so as to show entitlement to the "extraordinary remedy [of equitable tolling] which should be extended only sparingly." Hedges v. U.S*.,* 404 F.3d at 751. Accordingly, for the reasons set forth above, it is respectfully recommended that Plaintiff's claims arising prior to August 3, 2009, set forth at paragraphs IV 1-41 of the Third Amended Complaint, be dismissed with prejudice.

### 3. Exhaustion of Grievance Procedures

Defendants seek dismissal of Plaintiff's claim alleging that he was fed urine-tainted chicken for failure to comply with the administrative remedy exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). Plaintiff's Third Amended Complaint alleges that he bypassed the grievance process because:

> [he] had given up all hope that he would be relieved of the retaliation commited (*sic*) by this Defendant so the Plaintiff did not even report this incident in fear that greater retaliation would be the results dealing with this institution, the Plaintiff instead decided to report everything to a higher authority which is a judge in hope for real justice.

[ECF No. 49, ¶ 64 (*sic passim)*].

The PLRA, however, does not contain an exception to the clear mandate that all claims first be addressed through available administrative procedures:

> No action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e (a).  The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. <u>Porter v. Nussle</u>, 534 U.S. 516 (2002); <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 723 n. 12, (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); <u>Concepcion v. Morton</u>, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. <u>McCarthy v. Madigan</u>, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. <u>Grimsley v. Rodriquez</u>, 113 F.3d 1246 (Table), 1997 WL 2356136 (10th Cir. May 8, 1997).  The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. <u>Nyhuis v. Reno</u>, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. <u>Woodford v. Ngo</u>, 548 U.S. 81, 87–91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." <u>Id.</u> at 83; <u>see also</u> <u>Spruill v. Gillis</u>, 372 F.3d 218, 228–29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [ ... ] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps

settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

Although failure to exhaust is an affirmative defense to be raised by a defendant, district courts are authorized to *sua sponte* dismiss inmate complaints pursuant to § 1997e(a) when failure to exhaust administrative remedies is apparent on the face of the complaint. See Pena-Ruiz v. Solorzano, 281 Fed. Appx. 110, 112 n. 3 (3d Cir. 2008) (unpublished); see also Ray v. Kertes, 285 F.2d 287 n.5 (3d Cir. 2002); Nyhuis, 204 F.3d at 66.

Here, Plaintiff's Third Amended Complaint alleges that he did not try to participate in the grievance process for fear of additional retaliation. [ECF No. 49, p. 8, ¶ 64]. However, the United States Court of Appeals for the Third Circuit has held that fear of retaliation does not excuse mandatory participation in the grievance process. "[T]his Court has made clear that the exhaustion requirement is mandatory, see Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007), and has not recognized 'sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust." Pena-Ruiz v. Solorzano, 281 F. App'x at 113. Accordingly, in light of the fact that Plaintiff admits in his Third Amended Complaint that he has not exhausted his administrative remedies with regard to this claim, it is recommended that the claim arising out of his meal on March 30, 2011, set forth at paragraphs 62 - 64, be dismissed.

### 4. Joinder of Unrelated Claims

Plaintiff's Third Amended Complaint includes claims arising out of his transfer to SCI-Camp Hill on March 31, 2011, and the allegedly unsanitary and inhumane conditions of his assigned cell. [ECF No. 49, ¶¶ IV 74-101]. These claims were added to this action with the filing of Plaintiff's first Amended Complaint and are asserted against Defendants Carberry, Horner, Murray and Fair, who were employed at SCI-Camp Hill. Defendants contend that

pursuant to Rule 20(a)(2) of the Federal Rules of Civil Procedure governing the permissive joinder of parties, Plaintiff's claims against these four Defendants, which arise solely out of Plaintiff's incarceration at SCI-Camp Hill, have been improperly joined to this action, which primarily implicates the conditions of his confinement at SCI-Fayette. [ECF No. 53, pp. 4-7].

It is certainly true that Plaintiff is proceeding *pro se*, and such parties are accorded substantial deference and liberality in federal court. However, it is also clear that Plaintiff's Third Amended Complaint joins entirely unrelated sets of claims, involving different correctional officers and different facilities, which occurred between one to three years apart. Plaintiff's joinder of these wholly unrelated matters in a single amended complaint plainly violates the rules governing joinder of claims in civil litigation. See, e.g., Atwater v. Gabriel, No. 11-2043, 2012 WL 750754 *4 (M.D. Pa. Feb. 10, 2012). In particular, Rule 20(a)(2) of the Federal Rules of Civil Procedure provides that:

(a) Persons Who May Join or Be Joined.

(2) Defendants. Persons … may be joined in on action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction or occurrence, or series of transactions or occurrences; and

(B) any question of law of fact common to all defendants will arise in the action.

In this case, the Third Amended Complaint sets forth separate and distinct acts, allegedly committed by different actors at different institutions and at different times. The allegations against four specific Defendants concerning the allegedly unsanitary condition of Plaintiff's initial cell at SCI-Camp Hill on March 31, 2011, have no relation whatsoever to his claims

against twelve unrelated Defendants arising out of the allegedly abusive treatment received at least one year earlier at SCI-Fayette.

"'[G]iven the hodgepodge of claims raised in the … complaint,'" this Court may properly, in the exercise of its discretion, dismiss Plaintiff's claims arising out of the conditions of his confinement at SCI-Camp Hill without prejudice, and require Plaintiff to file a separate complaint for these factually distinct claims. Johnson v. Chambers, No. 11-831, 2012 WL 398335, *16 (M.D. Pa. Jan 20, 2012), quoting Boretsky v. Governor of New Jersey, No. 08-3313, 2011 WL 2036440, *3 (3d Cir. May 25, 2011). Further, because the United States District Court for the Middle District is the appropriate venue for Plaintiff's separate claims against Defendants Carberry, Horner, Murray and Fair, Plaintiff is directed to file his new separate action with the United States District Court for the Middle District, subject, of course, to an application to proceed *in forma pauperis* and the payment of fees as directed by the Court. See, Blood v. Fed. Bureau of Prisons, 351 F. App'x 604, 607 (3d Cir. 2009), citing Nicholas v. Tucker, 114 F.3d 17, 20 (2d Cir.1997) (Section 1915's filing fee requirements are rationally related to a legitimate government interest: deterring frivolous inmate lawsuits).[4]

## 5.    Grievance Procedures/Responses

Plaintiff alleges claims against Defendants Barnacle, Watson, Horner, Murray, Coleman, Fair, Hooper, and Salvay for failing to adequately investigate his grievances. Many of Plaintiff's claims arising from the adequacy of grievance procedures are barred by the applicable statute of limitations, or have been improperly joined herein. However, to the extent any such claims remain arising out of Plaintiff's confinement at either SCI-Fayette or SCI-Camp Hill, the claims

---

[4] Because Plaintiff's cause of action arising out of his conditions of confinement at SCI-Camp Hill accrued in March, 2011, Plaintiff suffers no prejudice from the dismissal of his claims from this action as the applicable statute of limitations has not yet expired.

are subject to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

Plaintiff cannot sustain Eighth Amendment claims against prison officials based solely upon assertions that those officials failed to adequately investigate his past grievances. Inmates do not have a constitutional right to a prison grievance system. See Jones, 433 U.S. at 137–138; Speight v. Sims, No. 08–2038, 283 F. App'x 880 (3d Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor–El v. Kelly, 892 F. Supp. 261, 275 (D.D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable); Cole v. Sobina, No. 04–99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec.19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

In sum, it is clearly established that inmates have no constitutional right to a grievance procedure in prison. See, e.g., Rivera v. Dep't of Corrections, 346 F. App'x 749 (3d Cir. 2009); Smith v. Lycoming County, 335 F. App'x 147 (3d Cir. 2009); Bartelli v. Galabanski, 225 F. App'x 194 (3d Cir. 2007). Therefore, the existence of a grievance procedure does not confer any substantive constitutional rights on inmates, Bartelli v. Jones, 231 F. App'x 129 (3d Cir. 2007), and an inmate's otherwise unadorned complaints about the handling of his grievances fail as a matter of law. In this case, Plaintiff's claims against Defendants Barnacle, Watson, Horner, Murray, Coleman, Fair, Hooper, and Salvay fairly construed, consist of little more than dissatisfaction with their processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, Defendants Barnacle, Watson, Horner, Murray, Coleman, Fair, Hooper, and Salvay should be dismissed.

### 6.    Personal Involvement

Alternatively, Defendants seek the dismissal of Plaintiff's claims which are predicated upon supervisory roles and which fail to state facts showing a Defendant's contemporaneous personal involvement in alleged constitutional violations. As indicated in Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss [ECF No. 54, p. 6], these claims are asserted against Defendants Barnacle, Salvay, Coleman, Watson, Tretinik, Hooper, Tift, Fair, Horner and Murray. [ECF No. 54, p. 6]. However, the claims asserted against Salvay, Coleman, Watson and Tretinik arising out of the June 2008 incident are time barred and thus do not state claims upon which relief may be granted and are subject to dismissal on that basis alone. With regard to the January 2010 and March 2011 incidents, with the exception of Defendants Albright, Leggett and Carberry, Plaintiff's Third Amended Complaint utterly fails to allege personal involvement against any of the identified Defendants so as to support a plausible claim for relief.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). At a minimum, such liability can be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." Id. , "Personal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them." Jetter v. Beard, 183 F. App'x. 178, 181 (3d Cir. 2006) (quoting Rode v. Dellarciprete, 845 F.2d at 1207 (3d Cir. 1988)).

Thus, if a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode v. Dellarciprete, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov.2, 2006). Additionally, the United States Court of Appeals for the Third Circuit has held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980); Hall v. Pa. State Police, 570 F.2d 86, 89 (3d Cir. 1978)). However, in the absence of these allegations, the complaint fails to meet the standard for a legally adequate civil rights claim. Id.

As in Evancho, Plaintiff's Third Amended Complaint does not allege any facts to indicate that Defendants had personal involvement in the violation of his rights. First, with regard to the January 2010 incident arising out of Plaintiff's restriction in body restraints and housing in a cold cell, Plaintiff does not allege contemporaneous personal involvement or knowledge on behalf of

Defendants Coleman, Tift or Barnacle. Indeed, Plaintiff's allegations as to each of these Defendants implicate conduct *after* Plaintiff reported the incident and concern his dissatisfaction with the grievance process, which he commenced five days later. [ECF No. 49, IV ¶¶ 50-59, No. 49-11].

In addition, Plaintiff attempts to state a claim for supervisory liability against Defendant Coleman for the January 2010 incident, based upon his denial of Plaintiff's written grievance against Defendant Albright for the June 2008 incident. [ECF No. 54, p. 7]. However, Plaintiff's grievance was rejected as unsubstantiated. [ECF No. 49-4]. Given the temporal distance of eighteen months between the June 2008 and January 2010 incidents, and the absence of any allegation that Plaintiff lodged any additional complaints with Superintendent Coleman concerning Defendant Albright in the interim, Plaintiff has not stated a claim for supervisory liability based upon knowledge of a pattern of similar incidents. Plaintiff's Third Amended Complaint also makes clear that Defendant Coleman was not aware of Plaintiff's January 2010 placement in restraints until February 4, 2010, nearly one month after the incident. [ECF No. 49-12]. This is insufficient to state a claim predicated upon contemporaneous, personal knowledge of Plaintiff's placement in restraints and subsequent acquiescence. See, Evancho, at 353; Huertas v. Sobina, No. 09-139, 2010 WL 3304263 *5 (W.D. Pa. July 14, 2010), *affirmed*, No. 11-3529, 2012 WL 1372146 (3d Cir. April 20, 2102).

For similar reasons, Plaintiff fails to state a claim against Defendants Horner, Fair and Murray arising out of Plaintiff's March 2011 six day confinement in an allegedly unsanitary cell at SCI-Camp Hill and Defendants' failure to properly train and supervise Defendant Carberry. Plaintiff alleges that he lodged grievances against Defendant Carberry because of the conditions of his cell. The first grievance, submitted on April 4, 2011, attached as an exhibit to his Third

Amended Complaint [ECF Nos. 49-22, 49-23] complains *only* of the absence of a mattress and bedding which Plaintiff alleges caused back pain. Plaintiff alleges that Defendant Horner denied the grievance on April 21, 2011, and that Plaintiff filed a first level appeal with Superintendent Murray on April 23, 2011. [ECF No. 49, VI ¶ 88, 89]. Plaintiff also appends a second grievance to his Complaint, dated April 5, 2011, complaining of the presence of feces in his cell. [ECF No 49-26]. Plaintiff's exhibits show this grievance was resolved on April 21, 2011, by Defendant Fair, who indicated that Plaintiff was moved to a different cell on April 6, 2011, and that, in any event, the cell had been cleaned and sanitized prior to Plaintiff's assignment therein. [ECF No 49-27]. Thus, Plaintiff's Third Amended Complaint makes clear that Defendants Horner, Fair and Murray had no contemporaneous knowledge of the conditions of his confinement or personal involvement in the alleged wrongdoing, and merely participated in the resolution of Plaintiff's grievances. Plaintiff, therefore, has failed to state claims against them for the violation of his constitutional rights. See, Rode, 845 F.2d at 1208.[5]

---

[5] Plaintiff's citation to McKenna v. Wright, 386 F.3d 432 (2d Cir. 2004), in support of his claims against Defendants Horner, Fair and Murray is unpersuasive. First, McKenna involved a prisoner who had been diagnosed with Hepatitis C, but pursuant to prison policy, was denied treatment because the short length of incarceration likely meant he would not receive all doses necessary for the efficacy of the requested treatment. The Plaintiff's claims against prison medical supervisors were predicated upon their personal involvement in the decision to withhold the plaintiff's necessary medical treatment. Similarly, the claims against non-medical supervisors were predicated upon their active continuation of an unlawful policy dictating the denial of necessary medical care based on the length of a sentence, which was within their supervisory responsibility. 386 F.3d at 437-438.

Here, Plaintiff does not allege that any of the named Defendants were aware that the cell at issue had not been properly sanitized pursuant to prison policy before Plaintiff's placement. Instead, Plaintiff relies upon affidavits of other inmates alleging unsanitary condition of the cell and an outside yard "cage" months after the date at issue, as well as an affidavit stating that the cell was covered in feces prior to Plaintiff's placement and that a member of the biohazard team was overheard saying he did not want to clean the cell. [ECF No. 54, p. 8; ECF No. 49-19-22]. This evidence, however, does not support a claim that any named Defendant was aware of the cell's condition and acquiesced in Plaintiff's placement in disregard of specific knowledge of the condition of the cell. Finally, to the extent Plaintiff relies upon the Motion for a Temporary Restraining Order in Henry v. Dept. Superintendent Overmyer, No. 10-189 (W.D. Pa.), to establish the unsanitary conditions of the cell at issue, the evidence therein actually supports a finding that the cell was sanitized pursuant to routine policy. Henry alleged the unsanitary conditions of an outside yard and a cell at SCI-Camp Hill. During the hearing on his Motion for a Temporary Restraining Order, it was established that the cells and yards at SCI-Camp Hill are routinely sanitized using a pressure washer and ionizer when fecal matter or bodily fluids are observed, and that each cell is inspected before a new inmate is placed for housing. Id., (No. 10-189) at ECF 56, pp. 10-14. United States Magistrate Judge Susan

For the reasons set forth above, it is respectfully recommended that the claims asserted against Defendants Barnacle, Salvay, Coleman, Watson, Tretinik, Hooper, Tift, Fair, Horner and Murray, arising out of the alleged incidents of June 19, 2008, January 10, 2010, and the conditions of Plaintiff's cell at SCI-Camp Hill be dismissed because of the absence of facts alleging sufficient personal involvement in the purported violation of Plaintiff's rights.

### 7. Plaintiff's Remaining Claims.

Plaintiff's remaining claims include claims against Defendant Tift for the alleged retaliatory transfer to SCI-Camp Hill with cell restrictions and claims against Defendants Albright and Leggett for alleged retaliation and excessive force arising out of Plaintiff's placement in restraints on January 10, 2010. At this stage of the litigation, each of these claims is adequately pled to state plausible claims for relief.

### D. CONCLUSION

For the foregoing reasons, is respectfully recommended that Defendants' Partial Motion to Dismiss [ECF No. 50] be granted in part and denied in part. Specifically, it is recommended that Defendants Barnacle, Salvay, Coleman, Watson, Tretinik, Hooper, Fair, Horner and Murray be dismissed from this action. Further, it is respectfully recommended that Plaintiff's remaining claim arising out of the alleged unsanitary conditions of his confinement at SCI-Camp Hill against Defendant Carberry be dismissed without prejudice to be filed in the United States District Court for the Middle District of Pennsylvania, with the payment of the requisite filing fee. It is respectfully recommended that Defendants' Partial Motion to Dismiss with regard to the March 11, 2011, incident involving allegedly tainted chicken, be dismissed for Plaintiff's admitted and unexcused failure to exhaust available administrative procedures. However, it is

---

Baxter, after reviewing the evidence, much of which is identical to the evidence relied upon by Plaintiff herein, and citing the testimony of Defendant Carberry concerning prison policy for cell cleaning, determined that "the cell and yard were cleaned and do not have feces and other bodily fluids in them at this time." Id. at 21.

recommended that Defendants' Partial Motion to Dismiss be denied with regard to Plaintiff's claims against Defendant Tift and Albright for the alleged retaliatory transfer to SCI-Camp Hill.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: July 6, 2012

cc:     The Honorable Terrence F. McVerry
        United States District Judge

        All counsel of record by Notice of Electronic Filing

        David Iverson
        GE-2064
        SCI Fayette
        Box 9999
        LaBelle, PA 15450